**23-11497**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

STEVEN G. DELL,

*Plaintiff-Appellant,*

—v.—

UNUM INSURANCE COMPANY,
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

## BRIEF FOR PLAINTIFF-APPELLANT

MICHAEL JAY FERRIN
LAW OFFICE OF
  MICHAEL JAY FERRIN
910 South 8th Street, Suite 303
Fernandina Beach, Florida 32034
(904) 544-4000

*Attorney for Plaintiff-Appellant*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Eleventh Circuit Rule 26.1-1, appellant certifies that the following named persons are parties interested in the outcome of this case:

1.  Dell, Steven G., Plaintiff

2.  Ferrin, Michael Jay, Plaintiff's Attorney

3.  Meagher, John Edward, Defendants' Attorney

4.  Monk, Jacob Benjamin, Defendants' Attorney

5.  Provident Life and Accident Insurance Company, Defendant

6.  Reynolds, Damien Kirkpatrick, Defendants' Attorney

7.  Shutts & Bowen, LLP, Defendants' Attorneys Law Firm

8.  Singhal, Raag, United States District Judge

9.  Unum Group, Parent Company of Defendants "UNM"

10. Unum Insurance Company, Defendant

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Not Applicable to the Plaintiff/Appellant.

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant requests oral argument because the impact of the district court's Order and Judgment on the Pleadings goes beyond the results in Dell's claim and because it is important to have both party's appellate counsel present before the court to answer questions regarding issues that may need further clarification or authority before this Court can render its just and far-reaching decision.

Unumprovident's attempt to set up a pseudo statute of limitations defense that…

a) is based on terms that are clearly not in the policy of insurance that misrepresent the facts and the duties and rights of the insured and the insurer;

b) is contrary to the law on anticipatory repudiation;

c) mischaracterizes the timing and law relevant to Florida's statute of limitations for breach of contract under the facts of this case;

d) is contrary to the legal standards that must be met before a judgment on the pleadings may be granted;

e) is contrary to the law on construing insurance contracts; and

f) is contrary to the law on the burden of proof on exclusion of coverage in an insurance contract;

…will most surely cause conflicts, misunderstandings and misapplications of the substantive laws of Florida, as well as the procedural laws of the federal courts that will impact the rights of future litigants beyond Dell.

## TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS............................. C-1

CORPORATE DISCLOSURE STATEMENT.............................. C-2

STATEMENT REGARDING ORAL ARGUMENT ........................... i

TABLE OF AUTHORITIES ...................................................... v

STATEMENT REGARDING ADOPTION OF BRIEFS OF
    OTHER PARTIES........................................................... vii

STATEMENT OF SUBJECT-MATTER AND APPELLATE
    JURISDICTION ............................................................. vii

STATEMENT OF THE ISSUES................................................. 1

STATEMENT OF THE CASE.................................................... 2

    i)    Course of Proceedings................................................ 2

    ii)    Statement of Facts .................................................... 3

    iii)    Standard of Review................................................... 11

SUMMARY OF ARGUMENT................................................... 12

THE DISTRICT COURT SHOULD HAVE DENIED
UNUMPROVIDENT'S MOTION FOR JUDGMENT ON THE
PLEADINGS FOR THE FOLLOWING REASONS...................... 12

A. The District Court Did Not Correctly Apply the Legal
    Standard Applicable to Motions for Judgment on the
    Pleadings................................................................... 12

B. The District Court's Analysis That the November 2001 Letter
    Triggered the Statute of Limitations Is Based On Terms and
    Requirements Not Contained in the Insurance Contract............. 13

C. The District Court Erred by Rejecting Dell's Argument on
    Anticipatory Repudiation.............................................. 13

D. Causation of a Total Disability by Sickness is Not Only a Question of Fact, Under the Specific Terms in Unmprovident's Policy It Is An Exclusion to Payment of Lifetime Benefits ...................................................... 14

ARGUMENT ................................................................. 16

A. The District Court Did Not Correctly Apply the Legal Standard Applicable to Motions for Judgment on the Pleadings ................................................................. 16

B. The District Court's Analysis That the November 2001 Letter Triggered the Statute of Limitations Is Based On Terms and Requirements Not Contained in the Insurance Contract .............. 21

C. The District Court Erred by Rejecting Dell's Argument on Anticipatory Repudiation ................................................ 23

D. Causation of a Total Disability by Sickness is Not Only a Question of Fact, Under the Specific Terms in Unmprovident's Policy It Is An Exclusion to Payment of Lifetime Benefits ...................................................... 29

CONCLUSION ................................................................. 34

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ...... 35

CERTIFICATE OF SERVICE ................................................ 36

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

## Cases

*Auto– Owners Ins. Co. v. Anderson*,
  756 So.2d 29 (Fla.2000) ............................................... 22, 23

*Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint
  Underwriting Ass'n*,
  137 F.3d 1293 (11th Cir. 1998) ...................................... 16, 21

*City of Bradenton v. Safety National Casualty Corp*.
  Case No. 8:17-cv-267 (M.D. Fla. 2017) ............................ 28, 33

*City of Pompano Beach v. Beatty*,
  222 So.3d 598 (Fla. 4th DCA 2017) ...................................... 22

*Crooms, M.D. Provident Life and Accident Company*,
  484 F. Supp. 2d 1286 (N. D. Ga. 2007) ................................... 33

*Diarsenic v. Sapphire– Fort Lauderdale, LLP*,
  693 F.Supp.2d 1325 (S.D.Fla.2010) ...................................... 26

*Dutra v. Kaplan*,
  137 So.3d 1190 (Fla. 3rd DCA, 2014) .................................... 25

*Franconia Associates v. United States*,
  536 U.S. 129 (2002) ....................................................... 24

*Hallum v. Provident Life and Accident Insurance Company*,
  326 F.3d 1374 (11th Cir. 2003) .......................................... 33

*Hawthorne v. Mac Adjustments, Inc.*,
  140 F. 3d 1367 (11th Cir. 1998) ......................................... 16

*King v. Akima Global Services, LLC*
  No. 18-13535 and 19-11185 (11th Cir. 2019) ............................ 11

*La Grasta v. First Union Securities, Inc*.
  358 F.3d 840 (11th Cir 2004) ............................................ 20

*RM Broad., LLC v. U.S. Dep't of Just.*,
  379 F. Supp. 3d 1256 (S.D. Fla. 2019) .................................. 16

v

PAGE(S)

*Spalter v. Am Nat'l Ins. Co.*,
   Case No. 19-21304-CIV (S.D Fla. 2019) ............................ 26, 27

*State Comprehensive Health Ass'n v. Carmichael*,
   706 So.2d 319 (Fla. 4th DCA 1997) ..................................... 32

## Statutes

28 U.S.C. § 1332 ....................................................... 2

28 U.S.C. § 1441(a) ..................................................... 2

28 U.S.C. § 1446 ....................................................... 2

Florida Statutes § 95.031 .............................................. 29

Florida Statutes § 95.031(1) .......................................... 29

Florida Statutes § 627.428 ............................................. 9

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................... 16

Fed. R. Civ. P. 12(c) .................................................. 16

## <u>STATEMENT REGARDING ADOPTION OF</u>
## <u>BRIEFS OF OTHER PARTIES</u>

Plaintiff/Appellant is not adopting any other party's briefs.

## <u>STATEMENT OF SUBJECT-MATTER</u>
## <u>AND APPELLATE JURISDICTION</u>

Plaintiff/Appellant's claim is for breach of a disability insurance contract applying the substantive law of the State of Florida. The district court has original jurisdiction pursuant to 28 U.S.C §§ 1332 and 1441(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

On April 2, 2023, the district court entered an Order Granting Judgment on the Pleadings [DE 45], and a Final Judgment in favor of Defendant/Appellees [DE 46]. Plaintiff/Appellant filed a timely Notice of Appeal on April 26, 2023 [DE 47].

## <u>STATEMENT OF THE ISSUES</u>

The issue on appeal is whether the district court erred by entering an Order Granting Defendant/Appellee's Motion for Judgment on the Pleadings [DE 45] and Final Judgment in favor of Defendant/Appellees [DE 46] for the following reasons:

A. The District Court Did Not Correctly Apply the Legal Standard Applicable to Motions for Judgment on the Pleadings

B. The District Court's Analysis That the November 2001 Letter Triggered the Statute of Limitations Is Based On Terms and Requirements Not Contained in the Insurance Contract.

C. The District Court Erred by Rejecting Dell's Argument on Anticipatory Repudiation.

D. Causation of a Total Disability by Sickness is Not Only a Question of Fact, Under the Specific Terms in Unumprovident's Policy It Is an Exclusion to Payment of Lifetime Benefits.

## <u>STATEMENT OF THE CASE</u>

### i) <u>Course of Proceedings</u>

Plaintiff/Appellant filed his Complaint in the Circuit Court of the 15th Judicial Circuit, in and for Palm Beach County, Florida, Case No. 50-2022-CA-004523 on May 11, 2022 [DE 1]. Defendant/Appellees removed the case to the United States District Court Southern District of Florida pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446 on June 24, 2022 [DE 1]. Plaintiff/Appellant did not seek remand. The Defendant/Appellees filed a Motion for Judgment on the Pleadings on July 22, 2022. [DE 14].  Before ruling, the district court permitted an Amended Complaint that was filed on December 2, 2022 [DE 27].  Defendant/Appellees Answered on December 23, 2022 [DE 30]. Defendant/Appellees Refiled its Motion for judgment on the Pleadings on January 6, 2023 [DE 36].

On April 2, 2023, the district court entered an Order Granting Judgment on the Pleadings [DE 45], and a Final Judgment in favor of Defendant/Appellees [DE 46]. Plaintiff/Appellant filed a timely Notice of Appeal on April 26, 2023 [DE 47].

ii) **Statement of Facts**

Factual Allegations in the Amended Complaint and Attached Exhibits:

On September 10, 1990, Dell purchased a "Disability Income Policy" (hereinafter referred to as "the policy") from Provident Life and Accident Insurance Company [DE 27 P. 2 ¶ 10] that is sometimes known as a related company Unum Group Corporation [DE 27 P.2 ¶ 7] (hereinafter the Defendant's will be referred to collectively as "Unumprovident". Dell paid all premiums due under the terms of the policy [DE 27 P. 3 ¶ 16].

On the evening of January 26, 2001, Dell was accidently injured when, while attempting to lift a heavy object, he experienced an immediate and sudden onset of severe back pain. On the following day, Dell's back pain and right leg pain were so debilitating that he was unable to move from a sitting to a standing position [DE 27 P. 3 ¶¶ 17-18].

On Monday, January 29, 2001, Dell sought medical evaluation and treatment for his injuries. Dell was initially treated conservatively, however as the severe pain persisted over the following weeks, his physician recommended more aggressive treatment in the form of epidural injections. Dell followed his doctor's recommendations and underwent two injections into his spine. [DE 27 P. 3 ¶¶ 17-18].

After his second injection he developed a spiking fever and reported to a hospital emergency room on March 2, 2001. After diagnostic testing, Dell was admitted for extensive emergent surgery in the early morning hours of March 3, 2001, for a bilateral laminectomy and evacuation of an epidural abscess at L3, L4 and L5; duraplasty and repair of intradural infection and chronic dural laceration at L4 with harvesting of lumbar aponeurosis; and right L3-L4 diskectomy [DE 27 P. 3 ¶¶ 19-23].

In April 2001, Dell realized that his physical condition resulting from the injury, the infection and the surgery, prevented him from performing his job as a trial attorney, and it was likely he would be unable to do so for an undetermined period into the future. Dell contacted Unumprovident and provided all the information requested by Unumprovident by completing their forms, answering questions, writing letters, and furnishing records from his employer and from his medical providers [DE 27 P. 4 ¶ 27].

During the application process Dell repeated the same history of his injury to Unumprovident that he has provided to any person, including medical providers who asked, that, on January 26, 2001 he accidently injured himself by trying to lift a heavy object, that he had multiple incidents of trauma in his past, but on the morning of January 27, 2001, the pain he experienced was more extreme than anything he previously experienced, and that it was debilitating to the point that he was unable

4

to move from a sitting position to a standing position, and had to crawl from his bathroom to his bedroom [DE 27 P. 4 ¶ 28].

Dell's treating physician stated on a UNUM form sent to UNUM dated March 29, 2001, that Dell's sudden onset of severe back pain in January 2001 was the result of an accident and multiple traumas [DE 27 P. 3 ¶¶ 27 and DE 27-3]

Unumprovident accepted his claim for monthly disability income payment*s*, determined Dell was totally disabled from performing his job as a trial attorney, and began paying monthly total disability benefits to Dell retroactive to January 29, 2001. During the ensuing years Unumprovident continued to monitor Dell's status by requesting frequent reports and medical treatment records.Dell's total disability is permanent; and he remains disabled from his profession as a trial attorney to the present day [DE 27 P. 4 ¶¶ 29-31].

Unumprovident paid monthly total disability benefits due under the policy until August 19, 2020, Dell's 65th birthday, when benefits were unilaterally and abruptly terminated by Unumprovident. On September 29, 2020, in a telephone conversation with a "Senior Benefits Coordinator" at Unumprovident, Dell learned that Unumprovident had concluded that his disability was not caused by an accident or injury and therefore Unumprovident decided his total disability benefits would not be paid for his lifetime. Dell did not understand how Unumprovident could have reached that conclusion based upon what occurred in late January 2001, so on

September 29, 2020, Dell sent an email to Unumprovident requesting among other things that his total disability benefits be reinstated, and that Unumprovident send him a copy of his claim file. [DE 27-2]. With no response from Unumprovident on October 15, 2020, Dell sent another email, that resulted in a phone call from a "Lead Benefit Specialist" at Unumprovident who advised Dell that his total disability benefits were terminated at age 65 because his claim was being administered by Unumprovident under the sickness provision of the policy. During the phone call on October 15, 2020, Dell explained that his disability was caused by an injury and that he had provided that information to Unumprovident when he reported the trauma in May of 2001. When asked by the Unumprovident Specialist to provide a more detailed description of the event, Dell responded by describing how he injured his back building a bridge for his kids and moving it to his back yard and explained the events leading up to the staph infection [DE 27 P. 5 ¶¶ 32-38].

On or about November 10, 2020, without even mentioning Dell's injury and the fact that he had reported the accident in May of 2001, Unumprovident notified Dell that Unumprovident would not reinstate his monthly total disability benefits. Later in November 2020, Unumprovident furnished Dell with .pdf copy of what Unumprovident represented to be its complete file on Dell's claim consisting of approximately 4,207 pages [DE 27 P. 6 ¶¶ 39-40].

The policy specifically provides that the maximum benefit period for a total disability caused by injuries before the insured's 65th birthday is the lifetime of the insured [DE 27 P. 6 ¶ 42 and DE 27-1 P.11].

The policy defines injuries as "accidental bodily injuries occurring while your policy is in force [DE 27 P. 6 ¶ 43 and DE 27-1 P.11].

The policy specifically provides that the maximum benefit period for a total disability caused by sickness before the insured's 61st birthday is to the 65th birthday of the insured. [DE 27 P. 6 ¶ 44 and DE 27-1 P.11].

The policy defines sickness as "sickness or disease which is first manifested while your policy is in force." [DE 27 P. 6 ¶ 45 and DE 27-1 P.11].

The policy states that the "fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit." The plain language of the policy clearly requires the payment of the greater maximum total disability benefits if accidental bodily injuries are a contributing cause of a disability, even if the disability is also caused by a sickness. [DE 27 P. 6-7 ¶¶ 46-48 and DE 27-1 P.13].

After paying Dell's monthly total disability benefits due under the policy from the determination that Dell was entitled to total disability benefits, retroactive to January 29, 2001, Unumprovident breached the policy when it terminated Dell's monthly total disability benefits on August 19, 2020. [DE 27 P. 7 ¶ 51].

After termination of his monthly total disability benefits, and after being provided with specific details of the injury, how it occurred and how it resulted in his total disability, as documented by a Unumprovident employee in October 2020, Unumprovident continued to shirk its duty to investigate the cause of the Dell's total disability, failed to acknowledge bodily injury as a contributing cause, and failed to correct its error when it prematurely terminated Dell's lifetime monthly total disability benefits [DE 27 P. 7-8 ¶ 52].

As a direct and proximate cause of Unumprovident's wrongful termination of monthly total disability benefits otherwise due to him, Dell has suffered economic damages from August 19, 2020, and thereafter, and continuing for the remainder of his life [DE 27 P. 8 ¶ 54].

Dell's claim for payment of monthly total disability payments of $4,230.00 was paid under the terms of the policy until August 19, 2020. Therefore the earliest date upon which this action could have been filed was August 20, 2020, the date that Unumprovident first denied payment of total disability benefits that were due under the policy [DE 27 P. 8 ¶ 56].

Prior to filing this action, the undersigned counsel made a formal written request that Dell's benefits be reinstated, Unumprovident responded in writing by counsel [DE 27 P. 8 ¶57 and 27-4].

8

Dell's Amended Complaint seeks judgment for compensatory damages, all benefits due under the policy; for prejudgment interest from the date each payment became due after August 19, 2020, to the date of the judgment and for specific performance of the policy, requiring the Defendants to pay the monthly total disability benefits of $4,230.00 beginning within 30 days of the judgment, continuing as long as Plaintiff remains disabled, for the remainder of his life; and for attorney's fees pursuant to Florida Statutes § 627.428, and costs of this action. [DE 27 P.9].

<u>Factual Allegations in the Answer to the Amended Complaint
and Attached Exhibits:</u>

Defendants deny that Provident accepted Plaintiff's claim, as submitted, in that Plaintiff Stated in his Disability Claim that his injury was due to "accident", but Plaintiff failed to provide sufficient evidence establishing that was so. Defendants admit and aver specifically that, on November 13, 2001, Provident informed Plaintiff that it determined that Plaintiff's claim was due to "sickness," as defined by the Policy. A copy of the November 13, 2001 Letter is attached hereto as **Defense Exhibit 3**. Defendants admit that Provident paid monthly disability benefits retroactive to January 29, 2001 with the first payment being for the period starting February 28, 2001, following the Policy's 30-day elimination period. [DE 30 P. 4-5, ¶ 29 and DE 30-3].

Defendants deny that, on September 29, 2020, Plaintiff learned that Provident administered Plaintiff's disability claim under the "sickness" provision and not the "accident or injury" provision.  Defendants aver specifically that, on November 13, 2001, Provident informed Plaintiff that it determined that his total disability was due to sickness.  **D. Exh. 3.**  Defendants also aver specifically that, on July 1, 2013, Provident again informed Plaintiff that it was providing Total Disability benefits under the "Sickness" provision of the Policy and that the maximum benefit period for Total Disability benefits is To Age 65.  A copy of the July 1, 2013 Letter is attached as **Defense Exhibit 4**.  Defendants also aver specifically that, thereafter in 2013, Plaintiff and Provident discussed the possibility of a lump-sum settlement, which included a review of the Policy by Plaintiff's attorney.  A copy of the August 28, 2013 Letter to Plaintiff is attached as **Defense Exhibit 5**; a copy of the September 27, 2013 Letter to Plaintiff is attached as **Defense Exhibit 6**; a copy of the October 15, 2013 Letter from Plaintiff to Provident is attached as **Defense Exhibit 7** [DE 30 P. 5, ¶ 34 and DE 30-3, 30-4, 30-5, 30-6 and 30-7].

Defendants admit that Plaintiff's benefits terminated at age 65 because his claim was administered under the sickness provision of the policy.  [DE 30 P. 6, ¶ 36].

Defendants admit that on November 10, 2020, Provident sent a letter to Plaintiff, informing him that it had sent him a letter dated November 13, 2001 of the

"decision regarding the administration of [his] claim under the Sickness provision of the policy" and a second letter dated November 13, 2013, "which served as a reminder that [his] claim was being administered under the Sickness provision of the policy." A copy of the November 10, 2020 Letter is attached as **Defense Exhibit 8**. Defendants deny the remaining allegations contained within paragraph 39 of the Amended Complaint. [DE 30 P. 6-7, ¶ 39 and DE 30-8].

Third Affirmative Defense:

"Plaintiff's breach of contract claim is barred by the applicable statute of limitations." [No other allegations or fact or law]

### iii)  **Standard of Review**

The standard of review of orders granting judgment on the pleadings is *de novo,*

*King v. Akima Global Services, LLC*  No. 18-13535 and 19-11185 (11th Cir. 2019).

## SUMMARY OF ARGUMENT

### THE DISTRICT COURT SHOULD HAVE DENIED UNUMPROVIDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS FOR THE FOLLOWING REASONS:

### A. The District Court Did Not Correctly Apply the Legal Standard Applicable to Motions for Judgment on the Pleadings.

The court's conclusion that the statute began to run in 2001 in contrary to the factual allegations set forth in Dell's Amended Complaint. Dell's Amended Complaint clearly and repeatedly contains *detailed factual* allegations averring that his total disability was caused by an injury in 2001; that Unumprovident accepted his claim for monthly total disability benefits and paid monthly benefits due under the terms of the policy retroactive to January 29, 2001; and that Unumprovident did not breach the insurance contract until it failed to pay benefits due under the terms of the policy after August 20, 2020. Thus, his Complaint filed on May 11, 2022, is not barred by Florida's Statute of Limitations.

Viewing Dell's allegations and Unumprovident's admissions in the pleadings in the light most favorable to the non-moving party, as the court must do, there was no legal or factual basis for the court to grant the Motion for Judgment on the Pleadings.

**B. The District Court's Analysis That the November 2001 Letter Triggered the Statute of Limitations Is Based On Terms and Requirements Not Contained in the Insurance Contract.**

The court's conclusion that the statute of limitations began to run and expired years before Unumprovident breached the policy is founded completely on terms not in the policy. There are no terms in the policy that permit Unumprovident to reject the history Dell gave to Unumprovident and replace it with their "opinion" on causation. The policy does not obligate Dell to accept or reject Unumprovident's opinion or decision on how it administered or processed his claim. Neither Unumprovident nor the court can re-write the insurance contract by inserting requirements that are not part of the policy.

**C. The District Court Erred by Rejecting Dell's Argument on Anticipatory Repudiation.**

The court erred by concluding Dell's argument on anticipatory breach to be "unavailing" and "unpersuasive." Breach of a contract, with no special exception for an insurance contract, occurs at the time indicated for performance in the contract. But a promisor's renunciation of a contractual duty before the time fixed for performance in the contract is a repudiation, which does not ripen into a breach prior to the time for performance unless the promisee elects to treat it as such. Thus, Unumprovident's decision in 2001 that it intended to terminate Dell's monthly

13

disability benefits on August 19, 2020, even if he remained totally disabled under the policy definition, was not a breach of the policy until the failure to pay total disability benefits beginning on August 20, 2020.

### D. Causation of a Total Disability by Sickness is Not Only a Question of Fact, Under the Specific Terms in Unumprovident's Policy It Is An Exclusion to Payment of Lifetime Benefits.

The cornerstone of Unumprovident's statute of limitations defense is a November 2001 letter, and the cornerstone of the letter is a fact question, that is the causation of Dell's total disability: injury versus sickness, or both combined. The district court's order stated that this factual issue does not resolve the threshold legal issue of timeliness. We disagree because the fact question of causation is relevant to the role of the November 2001 letter. The purpose of the November 2001 letter has nothing to do with an insureds status of being totally disabled, that has never been contested. The question of whether a sickness or an injury caused the total disability is irrelevant until the possibility of an exclusion of those benefits arises on the insured's 65th birthday. The entire purpose of the November 2001 letter is illegitimate, an attempt by Unumprovident to shift the burden of proof of an exclusion to the insured based upon a factual question, causation.

14

The November 2001 letter, which does not represent a denial of any benefits due at the time of the letter, or any time before August 20, 2020, and did not and could not prematurely cut off Dell's right to litigate the factual issue of causation by filing suit prior to August 20, *2025*.  Unumprovident cannot turn its "opinion" into a "sword" to defeat an otherwise timely lawsuit.

## **ARGUMENT**

### A. The District Court Did Not Correctly Apply the Legal Standard Applicable to Motions for Judgment on the Pleadings.

The legal standard to be applied to a motion for judgment on the pleadings under Federal Rules of Civil Procedure 12 (c) is the same as a Rule 12 (b)(6) motion to dismiss. *Hawthorne v. Mac Adjustments, Inc.,* 140 F. 3d 1367, 1370 (11th Cir. 1998). Judgment on the pleadings is appropriate when *material facts are not in dispute* and judgment can be rendered by looking at *the substance of the pleading*s and any judicially noticed facts. *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). (emphasis added). The court may also consider all documents attached to or incorporated in the complaint by reference. See *RM Broad., LLC v. U.S. Dep't of Just.,* 379 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019) (citing *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014)). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Id. (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). In *Sanders* Id. 1271, this Court quoting *Fuller v. SunTrust Banks, Inc.,* 744 F.3d 685, 695–96 (11th Cir.2014) further qualified the use of attached documents:

> In general, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6) ]. This [C]ourt recognizes an exception,

however, in cases in which [1] a plaintiff refers to a document in [his] complaint, [2] the document is central to [his] claim, [3] *its contents are not in dispute*, and [4] the defendant attaches the document to its motion to dismiss.") (emphasis added and internal quotation marks and citations omitted)

In our case, the district court granted Unumprovident's Refiled Motion for Judgment on the Pleadings, that is based on an affirmative defense of statute of limitations, concluding: "The statute of limitations, therefore, ran from 2001 and is time-barred on the face of the Plaintiff's Complaint". [DE 45 p 8]. The court would be correct *only* if a complaint alleges a date of breach of contract that causes the applicable statute of limitations to begin to run, and that a complaint has not been filed within the limitation period of the statute, then in that situation, a judgment on the pleadings could be appropriate. All of the cases cited in the court's order involve such an allegation in those complaints. *However, that is not the situation in this case*. There is no allegation in Dell's Amended Complaint [DE 27] that supports the court's conclusion that the face of the Amended Complaint indicated that the statute of limitations on Dell's breach of contract claim began to run in 2001. No such allegation in the Amended Complaint was cited by the court.

Instead, the reason the court granted Unumprovident's Motion for Judgment on the Pleadings is stated by the court on page 7 of the court's order, which is based *entirely* on allegations made in Unumprovident's Answer to the Amended Complaint: "Unumprovident effectively denied Plaintiff's request for total disability

17

through the end of his lifetime by *processing* his claim as a "sickness" claim payable only to the Plaintiff's 65th birthday in 2001. Even after accepting Plaintiff's allegations as true, Defendants' *determination* in November 2001 was a specific refusal to pay the Plaintiff's claim beyond the Plaintiff's 65th birthday and *triggered* his cause of action." DE 45 p 7. (emphasis added).

The court's conclusion that the statute began to run in 2001 is erroneous because Dell's Amended Complaint clearly and repeatedly contains detailed *factual* allegations averring that his total disability was caused by an injury [DE 27, P. 3-8, ¶¶ 17, 18, 28, 34, 35, 36, 37, 38, 41, 46, 51 and 56]. Unumprovident admitted that Dell so informed them. [DE 30 P. 4, ¶ 29 ]. Dell's Amended Complaint also alleges that Unumprovident accepted Dell's claim for total disability benefits retroactive to the date of his first medical appointment January 29, 2001 [DE 27 P.4, ¶ 29 ], which was before Dell developed an epidural infection [DE 27 P.3, ¶ 23 ] Dell's application for total disability benefits dated April 12, 2001, was accepted by Unumprovident and Unumprovident began paying the monthly disability amount starting on April 20, 2001. [DE 30-4 P.1].

The November 2001 letter[1] attached to Unumprovident's Answer to the Amended Complaint [DE 30 P.5 ¶34 and DE 30-1] which the court concluded

---

[1] The unsigned letter is dated November 13, 2011, on the first page and November 12, 2001, on the second page.

"triggered" Dell's cause of action, is in direct conflict with Dell's detailed factual allegations in the Amended Complaint that his disability was due to an injury or accident.

According to the legal standard for judgment on the pleadings there must be *no dispute of material facts* in the pleadings when considering the *complaint* and *all* documents *attached to the complaint* in the light most favorable to the nonmoving party. Documents attached to Dell's Amended Complaint include his treating physicians report indicating his disability was caused by an accident [DE 27-3] and the insurance contract [DE 27-1] which does not contain many of the terms that form the basis of the Unumprovident letter of November 2001 relied on by the district court. It does however, contain a provision that clearly states that if a disability is caused by both an injury and sickness the maximum benefits shall be paid to the insured, placing the burden on Unumprovident to eliminate injury as a contributing cause [DE 27 P. 6-7, ¶¶ 46-47 ].

The letter of November 2001 should not have been considered *at all* as it does not qualify for the exception allowed by this Court in *Saunders* quoted above. Three of the four elements are not present: the November 2001 letter, 1) was not attached to or referenced in the Amended Complaint, 2) and therefor is not central to Dell's claim, and 3) it is clearly in dispute as it conflicts with multiple factual allegations

19

of the Amended Complaint as we explain in detail in Parts B, C and D of our Argument.

Unumprovident's Answer affirmatively alleges that the November 2001 letter (bearing 2 different dates, no signature and no method of transmittal) "informed" Dell of their opinion. There is no requirement that a plaintiff deny factual allegations in an answer that conflict with the factual allegations of the complaint, see *La Grasta v. First Union Securities, Inc*. 358 F.3d 840 (11th Cir 2004) (a statute of limitations bar is an affirmative defense and plaintiffs are not required to negate an affirmative defense in their complaint).  Since Unumprovident has the burden to prove its affirmative defense, this logically includes the authenticity of the November 2001 letter which is the basis of the defense. It is not Dell's obligation at the pleading stage, as suggested by the district courts order to offer "proof of its unauthenticity, nor does he deny receiving the letter from Unumprovident" [DE 45 P.6].   Dell's deposition was taken on March 23, 2023, wherein he answered all questions by Unumprovident's counsel regarding the November 13/12, 2001 letter.   His deposition is not in the record and cannot be considered on a motion for judgment on the pleadings. Thus, only if the district courts order is reversed will Dell's response to Unumprovident's allegations be available to the court, which is exactly why a motion for judgment on the pleadings cannot be granted when the complaint and answer clearly show that *material facts are in dispute, as they are here*.

Accordingly, viewing Dell's allegations and Unumprovident's admissions in the pleadings in the light most favorable to the non-moving party, as the court must do, *Bankers* Id. 1295, there was no legal or factual basis for the court to grant the Motion for Judgment on the Pleadings.

## B. The District Court's Analysis That the November 2001 Letter Triggered the Statute of Limitations Is Based On Terms and Requirements Not Contained in the Insurance Contract.

The court's conclusion that the statute of limitations began to run and expired years before Unumprovident breached the policy is founded completely on terms not in the policy.

Contrary to statements in the November 2001 letter, the policy Dell purchased from Unumprovident [DE 30-1] does not require the insured to seek a review Unumprovident's "opinion" or "decision" on causation of the insured's total disability, at any time, certainly not within 90 days as claimed in the letter. Nor does the policy require that Dell seek review of the manner Unumprovident "administered" or "processed" the claim.    The policy, which is the "entire contract" between the parties, [DE 30-1 P. 19] does not obligate Dell to accept or reject Unumprovident's opinion or decision on whether his total disability was caused by an injury or a sickness, or both. All these claims in the November 2001 letter are absent from the "entire" insurance contract.  Thus, Dell had no obligation under the

terms of the policy to challenge the opinion, administration or conclusions of Unumprovident until his monthly disability benefit was not paid in August 2020.

Neither Unumprovident nor the court can re-write the insurance contract by inserting requirements that are not part of the policy. *City of Pompano Beach v. Beatty,* 222 So.3d 598, 600 (Fla. 4th DCA 2017) stated:

> As this court has said before, "contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify—the terms and conditions of their agreement." *Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So.3d 989, 993 (Fla. 4th DCA 2014). That freedom is indeed a constitutionally protected right. *Nw. Nat'l Life Ins. Co. v. Riggs*, 203 U.S. 243, 252–53, 27 S.Ct. 126, 51 L.Ed. 168 (1906); *Hoffman v. Boyd*, 698 So.2d 346, 348 (Fla. 4th DCA 1997). And when parties choose to agree upon certain terms and conditions of their contract, it is not the province of the court to second-guess their wisdom or "substitute [its] judgment for that of the parties in order to relieve one from an alleged hardship of an improvident bargain." *Int'l Expositions, Inc. v. City of Miami Beach*, 274 So.2d 29, 30–31 (Fla. 3d DCA 1973). Rather, the court's task is to apply the parties' contract as written, not "rewrite" it under the guise of judicial construction. *Gulliver Schs., Inc. v. Snay*, 137 So.3d 1045, 1047 (Fla. 3d DCA 2014) ("Where contracts are clear and unambiguous, they should be construed as written, and the court can give them no other meaning.") (quoting *Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So.2d 628, 631 (Fla. 4th DCA 2000) ); *Pol v. Pol*, 705 So.2d 51, 53 (Fla. 3d DCA 1997) ("[A] court cannot rewrite the clear and unambiguous terms of a voluntary contract."

In the case of insurance contracts, "First, the contract must be construed "in accordance with the plain language." *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla.2000). Where the policy language "is susceptible to more than one reasonable interpretation, one providing coverage and ... another limiting coverage,

the insurance policy is considered ambiguous." *Id.* The ambiguous language is then construed "against the drafter and in favor of the insured" and "exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id.*

In addition to the fact that the entire foundation for Unumprovident's affirmative defense is based on terms not found in the policy, as an affirmative defense, it is, of course, Unumprovident's burden to prove facts to support that defense, which they have failed to do.[2] This leads into Parts C and D of our Argument.

### C. The District Court Erred by Rejecting Dell's Argument on Anticipatory Repudiation.

The court erred by concluding Dell's argument on anticipatory breach to be "unavailing" and "unpersuasive." Breach of a contract, with no special exception for an insurance contract, occurs at the time indicated for performance in the contract. But a promisor's renunciation of a contractual duty before the time fixed for performance in the contract is a repudiation, which does not ripen into a breach prior

---

[2] Neither Unumprovident nor the district court even address the provision in the policy that requires the insurer to pay maximum benefits (for life) unless the injury Dell suffered is totally eliminated as a contributing cause: The policy states that the "*fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.*" Thus, the plain language of the policy clearly requires the payment of the greater maximum total disability benefits if accidental bodily injuries are a contributing cause of a disability, even if the disability is also caused by a sickness [DE 27 P. 6-7, ¶¶ 46-47 and DE 27-1 P. 13].

to the time for performance unless the promisee elects to treat it as such. This fundamental rule of common law is explained and adopted in *Franconia Associates v. United States*, 536 U.S. 129, 142-43 (2002):

> Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach. See Restatement (Second) of Contracts § 235(2) (1979) (hereinafter Restatement) ("When performance of a duty under a contract is due[,] any non-performance is a breach."); Murray, *supra,* § 206, at 417. But the promisor's renunciation of a "contractual duty *before* the time fixed in the contract for ... performance" is a repudiation. 4 A. Corbin, Contracts § 959, p. 855 (1951) (emphasis added); Restatement § 250 (repudiation entails a statement or "voluntary affirmative act" indicating that the promisor "will commit a breach" when performance becomes due). Such a repudiation ripens into a breach prior to the time for performance only if the promisee "elects to treat it as such." See *Roehm v. Horst,* 178 U. S. 1, 13 (1900) (repudiation "give[s] the promisee the right of electing either to ... wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract").
>
> ***
>
> To recapitulate, "[t]he time of accrual ... depends on whether the injured party chooses to treat the ... repudiation as a present breach." 1 C. Corman, Limitation of Actions § 7.2.1, p. 488 (1991). If that party "[e]lects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from [the] time of performance to the date of such election." *Id.,* at 488-489. But if the injured party instead opts to await performance, "the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation." *Id.,* at 488.

Florida law, which the court must apply to this case, has adopted the same analysis: *Dutra v. Kaplan*, 137 So.3d 1190 (Fla. 3rd DCA, 2014) citing *Banks, P.A. v. Lardin, P.A.,* 938 So.2d 571 (Fla. 4th DCA, 2006), stated:

> Kaplan argued below, as he does here, that the statute of limitations began to run in April 2004, when he made clear to Dutra that he would not make payment under the agreement. Kaplan's theory was that the five year statute of limitations for breach of contract, section 95.11(2)(b), Florida Statutes (2004), began to run on that date and, therefore, the time for Dutra to file her breach of contract claim expired in April 2009. We do not agree.

> Kaplan's statement constituted an anticipatory breach of contract which gave rise to three options for Dutra. As was stated in *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.,* 938 So.2d 571 (Fla. 4th DCA 2006), when an anticipatory breach occurs, the non-breaching party has the right:

>> [F]irst, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position [1]; or, third, to await the time for performance of the contract and bring suit after that time has arrived.

> Id. at 575, citing Williston on Contracts and *Perry v. Shaw,* 152 Fla. 765, 13 So.2d 811 (1943). See also, *Franconia Assocs. v. U.S.*, 536 U.S. 129, 122S.Ct. 1993, 153 L.Ed.2d 132 (2002) ("the promisor's renunciation of a 'contractual duty before the time fixed in the contract for performance is a repudiation.' [ ] Such a repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.' ") and *Diarsenic v. Sapphire– Fort Lauderdale, LLP,* 693 F.Supp.2d 1325, 1345 (S.D.Fla.2010), *citing Franconia and Barbara G. Banks, supra*.

> In this case Dutra elected the third option. She gave Kaplan the full five years to make the payment due under the contract. When he failed to do so, Dutra's claim for breach of contract accrued. *See*,§ 95.031(1),

Fla. Stat. (2004) ("A cause of action accrues when the last element constituting the action occurs."). Plainly, Dutra brought her action within five years of that breach. Thus, the trial court erred when it ruled that the statute of limitations had expired prior to the institution of this action.

The complete quotation from the Southern District case cited above, *Diarsenic,* at 1345, in context is:

> ***Repudiation of a contractual duty ripens into a breach prior to the time for performance only if the promisee elects to treat it as such***. *Franconia Associates v. U.S.,* 536 U.S. 129, 143, 122 S. Ct. 1993, 153 L.Ed.2d 132 (2002). "Where one party, even before the time for performance of the contract has arrived, renounces it to the other party, the latter may act on the renunciation, treat the contract as broken, and sue before the time for performance." *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.,* 938 So.2d 571, 575 (Fla. 4th DCA 2006) (quoting *Sullivan v. McMillan,* 26 Fla. 543, 8 So. 450, 457 (1890)). *(Emphasis added).*

When the court rejected Dell's argument that a breach of a contractual duty does not occur until the time for performance, the court noted lack of a case citation on anticipatory breach involving an insurance contract [DE 45 P 7].

First, we question why the law on anticipatory breach of a contract in both federal courts and the State of Florida would, or should, not apply to insurance companies. The court stated no legal reason, analysis, or what aspect of an insurance policy would negate this rule. The courts analogy to life insurance cases is inapposite. In *Spalter v. Am Nat'l Ins. Co.*, Case No. 19-21304-CIV (S.D Fla. 2019), cited in the court's order [DE 45 P.7]. Spalter's life insurance policy had lapsed for

failure to pay the premiums according to the terms of the policy. His complaint "unequivocally demonstrates that the statute of limitations has expired." Id. P.4. The court rejected the argument that "anticipatory breach applies to life insurance contracts such that the statute of limitations accrues upon death". Id. P.4. The failure to apply anticipatory breach to life insurance policies, such as in *Spalter,* provides no reason not to apply it to the facts in this case, which challenges the validity of the insurers premature attempt to terminate ongoing monthly total disability payments.

In fact, there are very valid reasons for the law on anticipatory breach to apply to insurance contracts regarding ongoing monthly payments due in the future, as in Dell's case. Until such time as Unumprovident actually failed to pay benefits when due, any a lawsuit challenging Unumprovident's claim that Dell's disability was caused by a sickness would be purely academic. There are many reasons why a reduction of benefits would not occur even if Dell's total disability was not caused by an injury. Dell may not have lived until his 65th birthday. Dell may have accepted a lump sum settlement, as Unumprovident offered to him in 2013 [DE 30-5]. With the advances in medical science, Dell's qualification for monthly total disability benefits under the policy definition may have changed. Any of these events would make a lawsuit on the issue of causation before Dell's 65th birthday moot, and a total waste of judicial resources and the parties time and money.

27

Second, there is a district court case that has applied the law on anticipatory repudiation to an insurance contract that has not lapsed. In *City of Bradenton v. Safety National Casualty Corp*. Case No. 8:17-cv-267 (M.D. Fla. 2017), the district court applied the law of anticipatory repudiation as we have explained above, specifically citing both *Franconia* (See pages 8 and 9) and *Dutra* (See page 14). *City of Bradenton* involved a question of whether a letter sent by the insurer advising its insured that they had decided to deny coverage triggered the statute of limitations. The court held that the letter stating intent to deny coverage did not start the statute to run because payment was not due until a formal claim was made under the policy terms. The court relied on, and applied the law of anticipatory repudiation stating:

> The Court will not ignore the proof of loss requirement or infer a time limitation for submission of a proof of loss *that is not present in the contract*. *Nor will the Court disregard the well-established law on repudiation* because Safety National is displeased with the result of its application. See Franconia Assocs., 536 U.S. at 146 (2002)(declining to adopt an interpretation that would "*convert the repudiation doctrine from a shield for the promisee into a sword by which the [promisor] could invoke its own wrongdoing to defeat otherwise timely suits*"). Id. 16-17 (emphasis added).

Unumprovident's stated intent not to pay benefits after Dells 65th birthday, for whatever reason is no different than Safety National Casualty Corp's stated intent to deny coverage to the City of Bradenton. Additionally, Unumprovident's November 2001 letter had no impact on Dell's monthly total disability payments for nearly 20 years until Dell turned 65 and therefore did not trigger the statute of limitations, just

as in *City of Bradenton,* the statute was not triggered until a claim was made and subsequently denied under the terms of the policy.

Dell chose not to litigate what may have been an unnecessary lawsuit when he is not obligated to do so by law. He did not treat Unumprovident's "opinion" on causation as a breach of his policy until his monthly total disability benefits were not paid beginning August 20, 2020. Dell was legally authorized to use the "shield" of the law on anticipatory breach. Thus, the statute of limitations was not "triggered" until, at the earliest, on August 20, 2020, Florida Statutes § 95.031 and 95.031(1). Unumprovident cannot use its premature repudiation, relying on terms not found in the insurance contract, as a sword to defeat "an otherwise timely suit."

### D. Causation of a Total Disability by Sickness is Not Only a Question of Fact, Under the Specific Terms in Unumprovident's Policy It Is An Exclusion to Payment of Lifetime Benefits.

The cornerstone of Unumprovident's statute of limitations defense is the November 2001 letter, and the cornerstone of the letter is a fact question, that is the causation of Dell's total disability: injury versus sickness. The district court's order, DE 45, stated that this factual issue does not "resolve the threshold legal issue of timeliness. Because the Plaintiff's claims are time-barred, this Court need not reach the merits of Plaintiff's arguments." [DE 45 P. 8].

29

We respectfully disagree with the court's analysis. The basis for our disagreement is found in the terms of the insurance policy. The fact question of causation is relevant to the role of the November 2001 letter. In order to argue that this letter has anything to do with the statute of limitations, not only does Unumprovident rely on terms not in the policy, but also comingles separate sections of the policy and confuses the elements of a "claim" for total disability as defined in the "Definition" section of the policy, [DE 30-1 P. 8] with a possible limitation of the duration of total disability benefits contained in the "Exclusion" [DE 30-1 P. 9] section of the policy.

When making a claim for total disability benefits it is Dell's burden to meet the requirements contained in the "Definition" section of the policy under "total disability". [DE 30-1 P. 8]. The *policy definition* of "total disability" requires that the disability is "due to Injuries or Sickness" but there is no difference in total disability benefits due based upon which caused the disability. Contrary to arguments made by Unumprovident, the definition of "Total Disability" makes no "distinction" *between* injuries or sickness. Nor does either cause, injury or sickness, make a difference in the amount of the monthly benefits.

Once an insured has established the elements contained in the definition of "Total Disability", [DE 30-1 P. 8] the insured has met his burden and the monthly benefits are due for those months the insured is disabled. The monthly amount of the

30

benefits is stated in another section of the policy "Policy Schedule" [DE 30-1 P. 5-6] . In Dell's policy the amount of monthly total disability benefit is $4,230, without any difference or distinction due to causation.

It is important to emphasize that the facts established by the pleadings and attached documents show that Dell's written application for total disability benefits was signed by Dell on April 12, 2001 [DE 30-2 P.3]. Unumprovident accepted Dell's claim for total disability benefits of $4,230 per month and began paying those benefits just 8 days later on April 20, 2001 [DE 30-4 P.1].

The letter of November 2001 is not a "denial" of any monthly benefits. Unumprovident paid those benefits for nearly 20 years after November 2001, based upon their continual monitoring that he remained totally disabled under the policy definition which has nothing to do with causation between injury or sickness. The duration of the monthly benefits is not otherwise addressed in the definition of total disability.

The limitation on benefits, despite being totally disabled, is in a section of the policy titled "Exclusions", [DE 30-1 P. 9] that incorporates another section titled "Policy Schedule". [DE 30-1 P. 5-6]. These sections are where the factual question of injury or sickness may permit the insurer to end a totally disabled insured's benefits on his 65th birthday. The "Exclusions" section that Unumprovident included in the policy states: "We will not pay benefits for loss we have *excluded*

by name or specific description; any such *exclusions* will appear in the Policy Schedule." [DE 30-1 P. 9] (emphasis added). The "Policy Schedule" [DE 30-1 P. 5-6] may limit benefits to the insured's 65th birthday  based on causation, thus the question of causation by sickness *or* injury is clearly an "exclusion" of total disability benefits, *not* an element of a total disability claim, or a separate category of total disability. Nor is the manner in which Unumprovident "administered" or "processed" Dell's claim prior to his 65th birthday vary based upon causation by sickness versus injury. The words "administer" and "process" do not appear in the policy.  Even if the "Exclusions" clause were to be considered ambiguous, it must be construed against the drafter and in favor of the insured: "In  fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *See State Comprehensive Health Ass'n v. Carmichael,* 706 So.2d 319, 320 (Fla. 4th  DCA 1997).

The purpose of the November 2001 letter has nothing to do with an insureds status of being totally disabled. The question of whether a sickness or an injury caused the total disability is irrelevant until the possibility of an exclusion, not a denial, of those benefits arises on the insured's 65th birthday.  The entire purpose of the November 2001 letter is illegitimate, an attempt by Unumprovident to shift the burden of proof of the exclusion to the insured based upon a factual question, causation. Of course, this is contrary to federal and Florida law which places the

burden on a defendant to prove facts which form the basis for its affirmative defenses. It is also clear that the issue of causation by a sickness or an injury is purely a factual issue, and when the pleadings frame that issue, as in this case, the factual issue cannot be resolved on a motion for judgment of the pleadings. There is also no question that an exclusion based upon injury versus sickness in a UnumProvident policy is a question of fact, see *Hallum v. Provident Life and Accident Insurance Company*, 326 F.3d 1374, 1376 (11th Cir. 2003), and *Crooms, M.D. Provident Life and Accident Compan*y, 484 F. Supp. 2d 1286, 1296 (N. D. Ga. 2007),

Thus, the unresolved factual question of injury or sickness is another reason the November 2001 letter *cannot possibly cause* Florida's five-year statute of limitation to run during a time when all benefits that are due have been paid.

The November 2001 letter, which does not represent a denial of any benefits due at the time of the letter, or any time before August 20, 2020, and did not and could not prematurely cut off Dell's right to litigate the factual issue of causation by filing suit prior to August 20, *2025*. As stated in *City of Bradenton* Unumprovident cannot turn its premature "opinion" into "*a sword by which the [promisor] could invoke its own wrongdoing to defeat otherwise timely suits.*" Id. 17.

33

## **<u>CONCLUSION</u>**

For any or all of the above reasons, Dell respectfully requests this Court to:

1.     Reverse the district court's ruling Granting Unumprovident's Motion

for Judgment on the Pleadings;

2.     Vacate the district court's Final Judgment and order dismissing the

case; and

3.     Remand the case to the district court for further proceedings.

Dated: July 12, 2023.

Respectfully submitted,

By:    <u>/s/ Michael Jay Ferrin</u>
Michael Jay Ferrin
Law Office of Michael Jay Ferrin
910 South 8th Street, Suite 303
Fernandina Beach, Florida 32034
(904) 544-4000
Attorney for Plaintiff/Appellant

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.      This document complies with the type-volume limit of Fed. R. App.

P. 32(a)(7(B)(i) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f) this document contains 8,003 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word in 14-point Time New Roman font.

Dated: July 12, 2023.                    Respectfully submitted,

                              By:    <u>/s/ Michael Jay Ferrin</u>
                                     Michael Jay Ferrin
                                     Law Office of Michael Jay Ferrin
                                     910 South 8th Street, Suite 303
                                     Fernandina Beach, Florida 32034
                                     (904) 544-4000
                                     Attorney for Plaintiff-Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Brief for Plaintiff-Appellant to be served on counsel for Defendant-Appellee via Electronic Mail generated by the Court's electronic filing system (CM/ECF):

> John E. Meagher
> Jacob B. Monk
> Damien Kirkpatrick Reynolds
>   Shutts & Bowen, LLP
> 200 South Biscayne Boulevard, Suite 4100
> Miami, Florida 33431
> (305) 358-6300

I certify that an electronic copy was uploaded to the Court's electronic filing system on July 12, 2023. Four paper copies of the foregoing Brief for Plaintiff-Appellant will be sent to the Clerk's Office on July 13, 2023 by Federal Express Next Business Day Delivery to:

> Clerk of Court
> United States Court of Appeals, Eleventh Circuit
> United States Courthouse
> 56 Forsyth Street, NW
> Atlanta, Georgia 30303
> (404) 335-6100

/s/ Michael Jay Ferrin
Michael Jay Ferrin

36